UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIMERLY GREENBERG,

    Plaintiff,

vs.

LAROX, INCORPORATED, and OUTOTEC           6:11-cv-06524-CJS-MWP

(USA) INC., as successor in interest to LAROX,

INCORPORATED,

    Defendants.

---

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND EXPERT PRECLJUSION

On May 23, 2010, Kim Greenberg was injured while working at the Xerox Webster, NY plant. He began working at the facility in January 2010. On the date of the accident, the plaintiff was part of a three-man team assigned to change out the filter cloth of a Larox PF 72/84 C1 60 pressure filter. As of the date of the incident, he had never changed the cloth filter of the machine, although he had cleaned the machine under supervision. He was assigned to turn a handle placed at the end of a steel spindle set on the forward leg of an A-frame device. The A- frame device also held a large roll consisting of the replacement cloth on a reel placed at its top. That cloth was attached to the back end of the old cloth and pulled into the machine while the old cloth was being reeled out of the machine by Mr. Greenberg. He was injured shortly after the process

1

started when the cloth became pinched in the drive roll inside the machine, causing the cloth to suddenly and forcefully reverse the direction of the crank handle the plaintiff was turning. Although Mr. Greenberg was informed before he started that he should not allow slack to develop in the cloth as he was reeling it up, no one informed him about the purpose of that instruction, nor was he told that the cloth could be suddenly pulled backwards under very high tension. Although the reel device he was using was put together by his employer, it matched the drawings set out in the Larox operators' manual. The only instruction to anyone cranking the machine which could remotely be construed as a warning was a single sentence: "Old cloth must keep tight when reeling."

### I.  SUMMARY JUDGMENT IS NOT APPROPRIATE GIVEN THE ISSUES OF MATERIAL FACT PRESENT IN THIS CASE

Summary judgment is only warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in

that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). The issue is not whether the evidence favors ones side or the other but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. " *Anderson*, 477 U.S. at 252. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996). "In applying the [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)

Here the defendant has failed to provide the court with evidence that meets this standard. In fact the evidence submitted favors the plaintiff to a high degree. Defendant argues that the machine it designed and manufactured is not defective, while at the same time arguing that plaintiff should not have used the crank reel because when the machine's cloth filter is being changed, it is possible that those changing it will be exposed to sudden reversal of the cloth at very high force.

## II.     THE DEFENDANT'S PRODUCT WAS DEFECTIVE.

*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102 (1983) is New York's leading case on the requirements necessary to prove a design defect. The court in *Voss* held that to establish a prima facie case in strict products liability for design defect, the plaintiff must show that the manufacturer marketed a product designed so that it was not reasonably safe, and that the defective design was a substantial factor in causing

3

plaintiff's injury. The court further held that a product would be deemed "not reasonably safe" if, were the design defect known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

Plaintiff does not claim that the machine is defective when in its normal operating mode. However, to change the filter, slack MUST be introduced into the cloth because that is on the only way to separate the two ends of the cloth and remove the old cloth from the machine. The pinching potential is present regardless of whether the cloth is being pulled out by hand or cranked on a roller. This makes it potentially dangerous to any operators near the cloth. The tendency of slack to be picked up by the drive roller has been known for years by the defendant. The obvious physical danger to anyone attempting to roll up the cloth under such circumstances was entirely overlooked by the defendant. Even with knowledge that the pinching and reversal of the cloth had led to breaking of parts on some machines, the defendant took no steps to protect against that situation or adequately warn about it.

The defendant argues that its machine was modified by Xerox Corporation, and that the holding in *Robinson vs. Reed-Prentiss*, 49 N.Y.2d 471 (1980) applies. Xerox did not modify the machine, and *Robinson* does not apply to this case. In *Robinson*, the plaintiff's employer deliberately overrode a major safety device by cutting a large hole through a Plexiglas guard in the front of a bead-making machine, allowing the plaintiff to reach his hand through the guard while the machine was operating. Under those circumstances, the New York Court of Appeals ruled that the manufacturer had supplied

a safe machine and could not be responsible for the alteration undertaken by the plaintiff's employer.

That is not the case here. Xerox did nothing to modify the pressure filter, and the Defendant has not identified any such modification. The operator's manual provided by the defendant to Xerox specifically sets forth the manner in which the cloth should be removed from the machine. The manual provides both pictorial and verbal instructions, all of which the plaintiff and his co-employees followed in undertaking the changeover. The defendant's representative, Mr. Kaipanen, testified that he had no objection to the mechanism being used by the plaintiff at the time this incident occurred. The double spindle A-frame device being used to install a new filter and simultaneously change out the old one functioned precisely as it was designed to function. Although Xerox fabricated the machine, it complies with the instruction set out in the Larox manual. According to Mr. Kaipanen, had Xerox wished, Larox could have fabricated the same device on behalf of Xerox. In fact, Larox has provided similar devices to other customers utilizing the same freewheeling design as the Xerox device. The defendant argues that the operators' manual advises those changing the cloth filter with the double spindle A-frame device to keep the "old cloth tight while reeling." Plaintiff testified that he did this, but Mr. Kaipanen stated that even where an operator believes he is keeping slack out of the cloth, slack might still be present and unseen.

The event which caused this accident occurred <u>inside</u> the Larox pressure filter when slack in the cloth filter was gathered around the high torque drive roller, causing the roller to suddenly reverse the cloth as it was being cranked by the plaintiff. It was the filter, rather than the crank, that brought about the plaintiff's injury.

5

The defendant argues that Xerox was utilizing the filter for a purpose not intended by Larox. Among other things, the defendant argues that the pressure filter is used primarily in mining operations, ignoring the fact that this machine model, as described in the manual, is designed for chemical processes. Further, defendant argues that the double spindle A- frame device was unique to Xerox when in fact Larox has fabricated and sold similar devices to other customers. Defendant argues that if Xerox had simply discarded the old cloth instead of attempting to save it for future purposes, the accident could have been avoided. But at no point in the operator's manual does Larox advise that the filter be removed by hand and thrown away whenever a new or different filter is installed. The only method for changing the cloth is the one set out in the manual itself. Prior to this incident, Larox was aware not only that the filter cloth could and would jam inside the machine, but on at least a couple of occasions the jams were so forceful that they broke parts on the machines. Despite the obvious potential for personal injury under the circumstances, Larox took no steps to prevent this from occurring and provided no warning to users that it could occur.

The testimony of Dr. David Quesnel, one of plaintiff's experts, shows that there is a clear design defect in the filter as well as a number of simple fixes for the problem. Placing a one-way ratchet upon the crank device is an obviously simple solution. Dr. Quesnel acknowledged that additional bracing would be required to prevent the crank device from being pulled backward under this scenario, but it could be done. In fact, Mr. Kaipanen testified that Larox provided such a crank device to Xerox later for use with another, newer machine. (Thomas Farnham testified that the newer device had a release mechanism in the event there was increased back tension on the web). Dr. Quesnel's

most complete solution, a motorized crank device with an electronic speed controller tied to the filter's drive roll, eliminates slack entirely along with human interaction with the cloth while it is being changed. Without slack, there is no possibility of pinching, and the threat of human injury and significant machine damage is removed. As Dr. Quesnel testified, the problem posed by slack in reel to reel transfers has been around for many years (think VCR tape rewinding) and the solution has likewise been available for many years and would entail a cost of about $350 to $500. In light of the $1,242,360 cost of the machine, such a solution is a negligible expense.

### III. THIS INJURY WAS CAUSED BY THE USE OF A SOUND PRODUCT (THE DOUBLE SPINDLE A FRAME) WITH A DEFECTIVE PRODUCT (FILTER)

Defendant cites *Rastelli vs. Goodyear Tire & Rubber*, 79 NY2d 289 (1991) in support of its motion. *Rastelli* involved the use of a defective tire rim with an otherwise defect-free tire. Larox analogizes its device to the tire, and the double spindle A- frame device to the tire rim. In fact, the reverse is true. There was no defect present in the device the plaintiff was using. The defect was in the Larox filter, which suddenly and forcefully reversed the crank handle plaintiff was turning. Larox was fully aware that Xerox was utilizing the double spindle A-frame device to change out the filter, and endorsed the method in its manual and in the testimony of Mr. Kaipanen. Larox also knew about the tendency of the cloth to reverse itself, yet it took no steps to instruct Xerox about that fact or about ways to avoid the problem. Mr. Kaipanen acknowledged

that an inexperienced crank operator, such as the plaintiff, might easily believe that he was keeping slack out of the system when in fact he was not.

Plaintiff has provided proof of the defective design via the report and testimony of Dr. David Quesnel. Assuming solely for the sake of argument that Xerox's use of a crank system can be construed as misuse, it was certainly foreseeable by Larox. A manufacturer has a duty to avoid defects in its product which could cause injury when misused in a way that is foreseeable. A manufacturer may be liable for failure to warn against foreseeable modifications that render the product unsafe, *Liriano v Hobart Corp.*, 92 NY2d 232 (1998). A manufacturer who sells a defectively designed product is liable for injuries resulting from foreseeable misuses of the product as well as from the product's intended use, *Lugo v LJN Toys, Ltd.*, 75 NY2d 850 (1990). This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes. *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257 (1995)

It was not reasonable for Larox to sell this filter device with a propensity for the cloth to jam, knowing that Xerox would be changing the cloth in the manner described. Larox appears to acknowledge this in arguing that it was unreasonable for Xerox to change the cloth in the way prescribed in the operators' manual. Even if such conduct on Xerox's part can be considered unreasonable, a plaintiff's mishandling of a product, in

8

and of itself, is not enough to entitle a defendant to summary judgment dismissing a design defect claim. *Yun Tung Chow v Reckitt & Colman, Inc.*, 17 NY3d 29 (2011). Rather, summary judgment in a strict products liability case may be granted on the basis of the plaintiff's conduct only when the plaintiff's actions constituted the sole proximate cause of his or her injuries, *id*.

### IV.    THE DEFENDANT FAILED IN ITS DUTY TO WARN

The duty to warn of dangers in the use of the product exists even though the product is perfectly designed and made. *Alfieri v Cabot Corp.*, 17 AD2d 455 (First Dept., 1962), aff'd, 13 NY2d 1027 (1963). A manufacturer is under a duty to ascertain the nature of its product and is presumed to have superior knowledge of it. There are several important considerations that directly affect the adequacy of a warning, including the location and conspicuousness of the warning and the method in which the warning is communicated to the ultimate user. Of critical importance is whether the warning sufficiently conveys the risk of danger associated with the product and is qualitatively sufficient to impart the particular risk of harm. In all but the most unusual of circumstances the adequacy of a warning is a question of fact. *Cooley v. Carter-Wallace, Inc.*, 102 A.D.2d 642, 646 (N.Y. App. Div. 4th Dep't 1984).

The detailed report prepared by Dr. William Vigilante and submitted with the defendants' motion papers clearly shows a number of ways in which the defendant failed in his obligation. As he stated at page 12 of his report:

9

Larox failed to identify the personal injury hazard associated with the reversal of the cloth during the cloth replacement procedure. Larox's failure to identify the personal injury hazard associated with the reversal of the cloth during the cloth replacement procedure resulted in their failure to provide Xerox with any warning related to that hazard.

### V.   PLAINTIFF'S EXPERT ENGINEER IS QUALIFIED TO OFFER HIS OPINION.

A court must ensure that the expert will be proffering opinions on issues or subject matters that are within his or her area of expertise. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir.1997). In assessing expert qualifications, however, liberality and flexibility should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications. *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994), *aff'd sub nom. Lappe v. Honda Motor Co.*, 101 F.3d 682 (2d Cir. 1996). This case clearly involves issues of mechanical engineering, topics certainly within the education and training of Dr. Quesnel.

As can be seen from his qualifications, as a PhD in Mechanical Engineering and Materials Science from Northwestern University, a professor of Mechanical Engineering at the University of Rochester for close to 40 years, with the last 20 plus years as a full professor, Dr. David Quesnel knows about cranks and reels and forces and motors. These are the true issues in this case, rather than the inner workings of a pressure filter. Plaintiff does not argue that the pressure filter is poorly designed as a filter, rather the design is dangerous for those who attempt to change the cloth pursuant to the instructions in the operators manual. The interplay between the drive roller and the cloth itself when

slack is introduced into the system creates the anger. Thus, whether or not Dr. Quesnel has designed or worked on pressure filters, or even seen one in operation, is truly irrelevant because we are concerned only with the manner in which a wide piece of cloth interacts with a drive roller, a spring-loaded roller, an uptake roller, and a human being. These issues are not unique to a Larox pressure filter, or any pressure filter. The wheel has been around since the dawn of human civilization and mechanical cranks have been used since at least Roman times. (See Wikipedia: Crank (Mechanical).

Defendant argues that Dr. Quesnel did not test the changes he proposed to make the cloth changing procedure safer. However, testing is not a requirement for admission of expert testimony. In *LaBarge v. Joslyn Clark Controls, Inc.*, 242 Fed. Appx. 780 (2d Cir. 2007), the Second Circuit held that actual testing of a theory by an expert is not a requirement of FRE 702; the issues is whether the theory is *testable.*

In *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, (2d Cir. 2000), the Defendant argued on appeal that plaintiff's experts should have been precluded because they had failed to conduct their own tests and relied only on data provided by Xerox's own experts and the DEC. The Second Circuit held that an expert may rely on data that he/she did not personally collect. "The Federal Rules of Evidence specifically provide that an expert may rely on facts or data "perceived by *or* made known to the expert at or before the hearing." Fed. R. Evid. 703 (emphasis added). The expert need not have conducted her own tests." 224 F.3d 85 at 95.

While it is true that two of the designs proposed by Dr. Quesnel might need additional components in order to provide for operator safety, such is certainly not the case with respect to his third design utilizing the electronic speed control and fractional

11

horsepower motor. The components he suggests have been tested many times via many such uses in industry. This design completely eliminates slack in the filter cloth, which is the origin of the problem, and it also removes humans from any area where they might be hurt during the process. Defendant has failed to raise any issue with this particular assessment by Dr. Quesnel.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the motion of the defendant should be denied in all respects.

Dated:  March 28, 2014               s/Joseph A. Regan

                                     Faraci Lange, LLP
                                     28 E. Main Street, Suite 1100
                                     Rochester, New York 14614
                                     (585) 325-5150
                                     Attorneys for Plaintiff