UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMERLY GREENBERG,

          Plaintiff,

                     Case # 11-CV-6524-FPG

v.

                     DECISION & ORDER

LAROX, INCORPORATED, and OUTOTEC
(USA) INC., as successor in interest to Larox,
Incorporated,

          Defendants.
_____


# BACKGROUND

## 1. Undisputed Facts[1]

### (a) Larox Pressure Filter

This products liability case involves a Larox pressure filter, model PF72/84C160 ("Larox pressure filter" or "Larox machine").

The Larox pressure filter is a machine that filters solids from liquids for use in chemical processing. A long, tightly wound filter cloth ("cloth") runs throughout the machine[2] and forms a closed loop. When the cloth moves, it is pulled by a hydraulically powered drive roller ("drive roller") as it travels through a series of other rollers in a serpentine path. Process slurry is pumped into chambers and on top of the cloth. Liquids go through the cloth, and solids accumulate on top.

Over time, the cloth wears out and needs to be replaced. The Larox manual includes step-by-step instructions, along with a diagram, on how to remove the old cloth and replace it with a new one. ECF No. 23-3. These instructions depict the old cloth being reeled out of the

---

[1]  Except as otherwise stated, the following facts are taken from the parties' respective Local Rule 56 Statements. ECF Nos. 21-3, 26.
[2]  In this particular machine, the filter cloth is 1.7 meters wide and can stretch over 100 meters long.

machine and on to a cloth rack exterior to the machine. *Id.* The new cloth is simultaneously reeled into the machine from a separate spindle on the same cloth rack. *Id.*

The exterior cloth rack depicted in the Larox manual is separate from the pressure filter itself, and was not included in the Larox sales portfolio. Upon request, however, Larox could and did fabricate customized cloth racks for customers to use with the Larox pressure filter. No alternate procedure to change the filter cloth is described or recommended in the Larox manual.

### (b) Xerox Cloth Rack

In 2006, Xerox purchased a Larox pressure filter for use in its Webster, New York plant. The purchase price was $1,242,360. Larox made no specific modifications to the pressure filter for Xerox, and Xerox did not request that Larox fabricate a cloth rack for use with the machine.

Xerox used the Larox pressure filter to manufacture color toner. Initially, Xerox did not intend to reuse filter cloth. However, Xerox soon determined that it needed a way to store and reuse old filter cloth as the cloth was changed out for use with different color toners.

Xerox's senior project manager, Steven Malachowski ("Malachowski"), sketched a design for a cloth rack to use when changing out the cloth in the Larox pressure filter. Xerox contractors then constructed the cloth rack according to Malachowski's design.[3] Like the rack depicted in the Larox manual, the Xerox cloth rack has two spindles: an upper spindle to hold a roll of the new cloth as it is fed into the pressure filter, and a lower spindle to reel in the used cloth as it is removed from the pressure filter. A hand-operated crank ("crank"), attached to the lower spindle, is rotated to reel in the used cloth.

Malachowski testified that either the first or second time Xerox employees used his cloth rack with the Larox machine, a Larox representative was present. ECF No. 21-9, Malachowski Dep. at 90.

---

[3] Malachowski had previously designed a similar cloth rack system for Xerox to use with a smaller Larox pressure filter. All the Larox machines used by Xerox had a method of collecting and reusing cloth.

### (c) Slack Cloth and the Xerox Cloth Rack

During the filter cloth changing procedure, slack may naturally develop in the used filter cloth as it exits the machine. When a cloth rack such as the one designed by Malachowski and constructed by Xerox is used to reel in the old cloth, this slack creates risk of injury. If slack develops in the used cloth between the pressure filter machine and the cloth rack, the cloth may become pinched in the pressure filter's drive roller and cause the used cloth to move in reverse direction. Because the hand crank on the Xerox cloth rack is connected to the used cloth, the hand crank may also suddenly reverse and cause injury to the person operating the crank.

The Larox manual, in the part describing how to change out a used filter cloth, states in bold that "Old cloth must keep tight when reeling." The Larox manual does not specify the particular type of cloth rack that should or should not be used in conjunction with the pressure filter machine, or detail how slack cloth may present a risk to someone operating a cloth rack with a simple hand-powered crank. ECF No. 23-3. Malachowski was aware from the Larox manual about the danger of slack developing in the used cloth.

Malachowski created a checklist for Xerox employees to follow when using his cloth rack to change out the cloth in the Larox pressure filter. The checklist includes the warning "Do NOT run cloth through Larox without tension!" ECF No. 21-11, Ex. H. In addition, Xerox employees received training from Xerox in connection with using the cloth rack system. The training included admonishing Xerox employees not to allow slack to develop in the used cloth as it is removed from the pressure filter machine.

### (d) May 23, 2010

On May 23, 2010, Xerox production supervisor Thomas Farnham ("Farnham") assigned three Xerox employees to change out the cloth in the Larox pressure filter: Stephen Gopaul ("Gopaul"), William Bingham ("Bingham"), and Plaintiff Kimerly Greenberg ("Plaintiff").

3

Farnham had been made aware by Malachowski that the used cloth must be kept taut while being reeled onto the Xerox cloth rack during a cloth change. Farnham was also specifically aware that if slack cloth became pinched in the pressure filter's drive roller, the hand crank on the Xerox cloth rack could suddenly reverse. Farnham shared this information with other members of the team that he supervised, but did not directly advise Plaintiff prior to the incident at issue.

Prior to changing out the cloth, Gopaul, Bingham and Plaintiff reviewed the Xerox checklist created by Malachowski. Gopaul testified that he was aware there should be no slack in the used filter cloth during the procedure.

Gopaul operated the remote control to the Larox pressure filter and stood on one side of the Xerox cloth rack. Bingham stood on the other side of the rack. Plaintiff operated the hand crank to reel in the used filter cloth onto the rack. Due to the design of the Xerox cloth rack, Plaintiff was facing away from the Larox machine as he was cranking in the used cloth.

Seconds after starting to reel in the cloth, Gopaul observed what he thought to be potential slack and stopped the Larox machine from forwarding the old cloth towards the rack. Plaintiff did not detect slack in the cloth he was reeling onto the spindle. As Plaintiff was cranking the spindle, he was unable to turn the crank further and the crank went in reverse. The reverse force of the crank against Plaintiff's right side propelled him backwards into a steel cage, resulting in injuries including a ruptured rotator cuff, aggravation of a pre-existing back condition, and sciatica.

## 2. Present Action

Plaintiff filed a complaint against Larox, Incorporated and Outotec (USA) Inc. ("Larox")[4] on July 26, 2011 in New York State Supreme Court, Wayne County. ECF No. 1, Ex. A. Plaintiff's Complaint alleges causes of action for defective design and failure to warn, sounding in both negligence and strict products liability under New York state law. *Id.* Larox filed a Notice of Removal to this Court on October 24, 2011. ECF No. 1.

In the instant Motion for Summary Judgment, Larox seeks dismissal of both Plaintiff's design defect and failure to warn claims. ECF No. 21-2. With respect to design defect, Larox argues that it cannot be liable, either in negligence or strict liability, because the Xerox cloth rack actually caused Plaintiff's injuries and was a substantial modification of the Larox machine. *Id.* With respect to failure to warn, Larox argues that (1) Larox had no duty to warn about the dangers caused by the Xerox cloth rack, and (2) because Plaintiff was already aware of the hazard at issue, additional warnings would have been superfluous. *Id.* In addition, Larox has moved to preclude the opinions given by Plaintiff's engineering expert. *Id.*

For the following reasons, Larox's Motion is granted.

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

---

[4] Larox, Incorporated merged with and into Outotec (USA) Inc., effective January 1, 2011. ECF No. 2. Larox, Incorporated no longer exists as a legal entity. *Id.* Outotec (USA) Inc. is the successor in interest to Larox, Incorporated. *Id.* For the purposes of this decision, both Defendants will be referred to as "Larox."

When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In order to establish a material issue of fact, the non-movant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). If, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott*, 550 U.S. at 380 (citing *Matsushita*, 475 U.S. at 586-587).

## DISCUSSION

### 1. Design Defect

Under New York law, a plaintiff seeking to impose liability for an alleged design defect must show that the product was "not reasonably safe" when it left the defendant's control, and that "the defective design was a substantial factor in causing plaintiff's injury." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983). To establish that a product was "not reasonably safe," a plaintiff is under an obligation to present evidence that the product, as designed, posed a "substantial likelihood of harm and that it was feasible to design the product in a safer manner." *Id.* at 108. Although the Court in *Voss* appeared to draw a distinction between design defect claims based in strict liability and design defect claims based in negligence, the New York Court of Appeals has since clarified that "the standards set forth in *Voss* apply to both" types of claims.

6

*Adams v. Genie Indus., Inc.*, 14 N.Y.3d 535, 543 (2010); *see also Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 107 (W.D.N.Y. 2011). Plaintiff's negligence and strict liability design defect claims will therefore be analyzed as one claim for the purposes of this discussion.

Plaintiff's design defect claim fails because he has not actually presented any evidence of a design defect in the Larox pressure filter. This case involves two devices: (1) the pressure filter machine, designed and manufactured by Larox, and (2) the hand-cranked cloth rack, designed and fabricated by Xerox for use with the Larox pressure filter. Although Xerox is not a party to this action, Plaintiff only points to alleged defects in the Xerox cloth rack.

The report by Plaintiff's proffered mechanical engineering expert, Dr. David Quesnel ("Dr. Quesnel"), is instructive. Dr. Quesnel opines that slack cloth getting caught in the Larox machine "was a foreseeable outcome of allowing the cloth to feed onto a shelf where it, and any excess that develops, was to be removed by the manual cranking of an operator generally facing away from the pinch point." ECF No. 21-15, Ex. L at 2. In other words, Dr. Quesnel places the blame for Plaintiff's accident squarely on the design *of the Xerox cloth rack*, not the Larox pressure filter.

The three alternative designs proposed by Dr. Quesnel further demonstrate that Plaintiff has failed to present a design defect in the Larox pressure filter. Dr. Quesnel's first alternative design is a "robust ratchet mechanism." *Id.* The ratchet, attached to the hand crank on the Xerox cloth rack, would prevent the hand crank from ever rotating backwards and would thereby prevent an injury such as the one suffered by Plaintiff. *Id.* Dr. Quesnel's second alternative design is a "wrap-spring clutch," which is simply another mechanism attached to the hand crank that would prevent the hand crank from rotating backwards. *Id.* Dr. Quesnel's third and final alternative design consists of "replacing the hand crank with a drive motor with electronics that can sense the torques and provide constant tension windup onto a gradually expanding roll." *Id.*

7

at 3. This alternative design would eliminate the need for manual cranking altogether. *Id.* Dr. Quesnel describes the benefits of this third design by stating, "In essence, this controller would replace the human with a perfect cranker." *Id.* All three of Dr. Quesnel's alternative designs seem like reasonable ways to prevent an injury such as the one suffered by Plaintiff. However, all three designs represent ways to fix *the Xerox cloth rack*, not the Larox pressure filter.[5] Because Larox is the only defendant in this case, and it is undisputed that Larox did not design or manufacture the Xerox cloth rack, Dr. Quesnel's alternative designs are irrelevant.

In opposition to summary judgment, Plaintiff points out that the Larox manual depicts a cloth rack similar to the one fabricated by Xerox being used to change out the cloth in the Larox pressure filter. But even assuming that the Xerox cloth rack was designed to match the one depicted in the Larox manual, this does not change the fact that Xerox, not Larox, fabricated the cloth rack at issue.

Plaintiff also emphasizes that Larox had created cloth racks for other customers upon request prior to the incident at issue. That fact is wholly irrelevant to this case, where it is undisputed that Xerox did not request a cloth rack from Larox and instead fabricated its own.

Lastly,[6] Plaintiff emphasizes that slack developed inside the Larox pressure filter and became caught in the drive roller of the Larox pressure filter. But Plaintiff does not present any argument as to how any changes *to the Larox pressure filter* could have prevented that from happening. Instead, as described above, all the evidence presented by Plaintiff and his proffered expert indicates how *the Xerox cloth rack* was defectively designed and how changes *to the Xerox cloth rack* could have prevented Plaintiff's injury.

---

[5]     At his deposition, Dr. Quesnel admitted that he focused exclusively on parts outside the Larox machine and that he did not include any alternative designs regarding the Larox machine in his report. ECF No. 21-16, Quesnel Dep. at 81:21-82:10. Plaintiff has not presented any evidence to contradict Dr. Quesnel's statements.
[6]     At some points in his reply brief, Plaintiff does seem to present another argument: that slack within the pressure filter would present risk of injury even if no cloth rack was being used. *See* ECF No. 24, at 4. However, Plaintiff cites zero pieces of evidence in support of this conclusion. In addition, such a conclusion is contradicted by Plaintiff's own proffered expert, who concludes only that the Xerox cloth rack was defective.

Plaintiff's failure to identify any defect in the Larox pressure filter itself is dispositive. *See Galletta v. Valmet, Inc.*, No. 5:04-CV-0313, 2007 WL 963288, at *4 (N.D.N.Y. Mar. 30, 2007) ("There must be something wrong with the product, and if there is nothing wrong there will be no liability." (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 155 (2d Cir. 1997))). Summary judgment is therefore granted as to Plaintiff's design defect claim.[7]

## 2. Failure To Warn

Larox argues that Plaintiff's failure to warn claim is precluded by *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992). I agree.

In *Rastelli*, the plaintiff's decedent was killed while inflating a Goodyear tire on his employer's dump truck. *Id.* at 293. The accident was allegedly caused by a defective multipiece tire rim, manufactured by a separate company, which suddenly and violently flew apart. *Id.* The Goodyear tire was allegedly made to be compatible with multipiece rims, and Goodyear was allegedly aware of the inherent dangers of using its tires with such rims. *Id.* at 297. Although the plaintiff conceded that the Goodyear tire itself was not defective, she argued that Goodyear was liable for failing to warn of the dangers caused by using its tires in conjunction with defective rims. *Id.* The New York Court of Appeals rejected that theory, holding that a manufacturer has no duty to warn "about another manufacturer's product when the first manufacturer produces a sound product which is compatible for use with a defective product of the other manufacturer." *Id.* at 297-98. The court in *Rastelli* reasoned that it would be improper to hold Goodyear liable for failing to warn about a defective rim where Goodyear had no control over its production, had no role in placing it in the stream of commerce, and derived no benefit from its sale. *Id.* at 298.

---

[7] Larox also moved to preclude the opinions of Dr. Quesnel pursuant to Federal Rules of Evidence Rule 702. ECF No. 21-2, at 15. Because Plaintiff fails to sustain a design defect claim even with the opinions of Dr. Quesnel, Larox's motion is moot.

Here, like in *Rastelli*, the only defect Plaintiff points to is in a device designed and manufactured by a third party. Plaintiff does not dispute that if the Larox pressure filter had been used with a nondefective cloth rack, such as a cloth rack with the modifications described in Dr. Quesnel's report, no accident would have occurred.[8] Although Larox had constructed cloth racks for other customers, Larox had no control over the design or manufacture of the Xerox cloth rack at issue in this case. The only company that derived benefit from the cloth rack was Xerox itself, which presumably saved money by not ordering a customized cloth rack from Larox. Like in *Rastelli*, the Larox pressure filter is compatible with both defective and nondefective cloth racks. A cloth rack is depicted in the Larox manual, but Plaintiff does not allege that Larox directed Xerox to use a simple hand crank rather than a hand crank with a ratchet mechanism or electronic device. No reasonable jury could conclude, therefore, that Larox contributed to the defect in the Xerox cloth rack.

Like the plaintiff in *Rastelli*, Plaintiff alleges that Larox was aware of the dangers caused by using a simple hand crank to reel in used cloth from the Larox pressure filter, and was aware that Xerox was using a hand crank to change out used cloth. But while foreseeability is relevant in this context, "a duty to warn against the dangers of a third party's product does not arise from foreseeability alone." *In re New York City Asbestos Litig.*, 990 N.Y.S.2d 174, 190 (2014) (quoting *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 802 (S.D.N.Y. 2011)). In *Rastelli*, the New York Court of Appeals declined to hold Goodyear responsible for warning about potential defects in multipiece rims despite the plaintiff's allegations that the Goodyear tire was designed to fit multipiece rims and that Goodyear was aware of the dangers caused by defective multipiece rims. *Rastelli*, 79 N.Y.2d at 297. This is not a case where use of a defective third party product is foreseeable due to the fact that the defendant manufacturer has an active role,

---

[8] In fact, in support of his design defect claim, Plaintiff argues at length that the modifications recommended by Dr. Quesnel *would have* prevented Plaintiff's injuries.

10

interest, or influence in the type of product or component part to be used with its product after it has placed its product into the stream of commerce. *See In re New York City Asbestos Litig.*, 990 N.Y.S.2d at 189 (holding that a duty to warn may arise in such a situation).

The facts of this case also do not present a situation, distinguishable from *Rastelli*, where "the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn." *Rastelli*, 79 N.Y.2d at 298 (citing *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435 (1983)); *see also Lent v. Signature Truck Sys., Inc.*, No. 06-CV-569S, 2011 WL 4575312, at *13 (W.D.N.Y. Sept. 30, 2011). On the contrary, Plaintiff's proffered expert concludes that a defect in the Xerox cloth rack, not in the Larox pressure filter, caused Plaintiff's injuries.

Because Plaintiff has only alleged defects in the Xerox cloth rack, and Larox had no control or influence over the design or manufacture of the Xerox cloth rack, *Rastelli* controls and summary judgment must therefore be granted as to Plaintiff's failure to warn claim.

## CONCLUSION

For the reasons stated above, Larox's Motion for Summary Judgment (ECF No. 21) is GRANTED. Plaintiff's Complaint is dismissed with prejudice. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: October 26, 2015
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court